MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

JOSE UBALDO ROMAN MARIA, NELSON
JAVIER VASQUEZ RODRIGUEZ,
PRUDENTE RAMIREZ CORNELIO, and
DAVID BENTZLER, *individually and on*
*behalf of others similarly situated,*

                               *Plaintiffs*,

            -against-

ROUGE TOMATE CHELSEA LLC (D/B/A
ROUGE TOMATE), ROUGE TOMATE
CORP. (D/B/A ROUGE TOMATE), ROUGE
TOMATE NEW YORK LLC (D/B/A ROUGE
TOMATE), EMMANUEL VERSTRAUTEN,
CHRISTIAN MOLINA, HARTLEY PARISH,
and GRIGORII GULIAEV,

                               *Defendants.*

------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Jose Ubaldo Roman Maria, Nelson Javier Vasquez Rodriguez, Prudente Ramirez

Cornelio, and David Bentzler , individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against Rouge Tomate Chelsea LLC (d/b/a Rouge Tomate), Rouge

Tomate Corp. (d/b/a Rouge Tomate), Rouge Tomate New York LLC (d/b/a Rouge Tomate),

("Defendant Corporations"), Emmanuel Verstrauten,  Christian Molina,  Hartley Parish, and

Grigorii Guliaev, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Rouge Tomate Chelsea LLC (d/b/a Rouge Tomate), Rouge Tomate Corp. (d/b/a Rouge Tomate), Rouge Tomate New York LLC (d/b/a Rouge Tomate), Emmanuel Verstrauten, Christian Molina, Hartley Parish, and Grigorii Guliaev.

2.      Defendants own, operate, or control a healthy restaurant, located at 126 W 18th St, New York, NY 10011 under the name "Rouge Tomate."

3.      Upon information and belief, individual Defendants Emmanuel Verstrauten, Christian Molina, Hartley Parish, and Grigorii Guliaev, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as food runners, expediters, assistant servers, busboys, and bartenders at the restaurant located at 126 W 18th St, New York, NY 10011.

5.      Plaintiffs were ostensibly employed as food runners, expediters, assistant servers, busboys, and bartenders. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to baking, cutting food, heating bread, polishing silverware, cups and plates, cleaning carpets, preparing order for delivery, cleaning plates, cleaning the floors, cleaning the bathrooms, buying food or wines when they were running short, drying plates, carrying down ice from the second floor to the bar on the first floor, wiping tables at the end of the night, placing the chairs on top of the tables, working as polishers and baristas, organizing and cleaning the bar, maintaining health code standards, organizing the common area and taking out the trash behind the bar every night (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9.     Defendants employed and accounted for Plaintiffs as food runners, expediters, assistant servers, busboys, and bartenders in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as food runners, expediters, assistant servers, busboys, and bartenders instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

13.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

14.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a healthy restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.    Plaintiff Jose Ubaldo Roman Maria ("Plaintiff Roman" or "Mr. Roman") is an adult individual residing in Queens County, New York.

21.    Plaintiff Roman was employed by Defendants at Rouge Tomate from approximately September 2017 until on or about October 4, 2018.

22.    Plaintiff Nelson Javier Vasquez Rodriguez ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Queens County, New York.

23.    Plaintiff Vasquez was employed by Defendants at Rouge Tomate from approximately October 4, 2017 until on or about September 29, 2018.

24.    Plaintiff Prudente Ramirez Cornelio ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in New York County, New York.

25.    Plaintiff Ramirez was employed by Defendants at Rouge Tomate from approximately April 2018 until on or about September 29, 2018.

26.    Plaintiff David Bentzler ("Plaintiff Bentzler" or "Mr. Bentzler") is an adult individual residing in Kings County, New York.

27.    Plaintiff Bentzler was employed by Defendants at Rouge Tomate from approximately August 15, 2016 until on or about August 24, 2018.

*Defendants*

28.    At all relevant times, Defendants owned, operated, or controlled a healthy restaurant, located at 126 W 18th St, New York, NY 10011 under the name "Rouge Tomate."

29.    Upon information and belief, Rouge Tomate Chelsea LLC (d/b/a Rouge Tomate) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 126 W 18th St, New York, NY 10011.

30.  Upon information and belief, Rouge Tomate Corp. (d/b/a Rouge Tomate) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 126 W 18th St, New York, NY 10011.

31.  Upon information and belief, Rouge Tomate New York LLC (d/b/a Rouge Tomate) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 126 W 18th St, New York, NY 10011.

32.  Defendant Emmanuel Verstrauten is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Emmanuel Verstrauten is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Emmanuel Verstrauten possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.  Defendant Christian Molina is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Christian Molina is sued individually in his capacity as a manager of Defendant Corporations. Defendant Christian Molina possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the

employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.    Defendant Hartley Parish is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hartley Parish is sued individually in his capacity as a manager of Defendant Corporations. Defendant Hartley Parish possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.    Defendant Grigorii Guliaev is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Grigorii Guliaev is sued individually in his capacity as a manager of Defendant Corporations. Defendant Grigorii Guliaev possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

36.    Defendants operate a healthy restaurant located in the Chelsea section of Manhattan in New York City.

37.    Individual Defendants, Emmanuel Verstrauten, Christian Molina, Hartley Parish, and Grigorii Guliaev, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

38.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

39.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

40.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

41.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

42.    Upon information and belief, Individual Defendant Emmanuel Verstrauten operates Defendant Corporations as either alter egos of himself and/or failed to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

   a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

   b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)  transferring assets and debts freely as between all Defendants,

   d)  operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of his own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

43.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

44.   In each year from 2016 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

45.   In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

46.   Plaintiffs are former employees of Defendants who ostensibly were employed as food runners, expediters, assistant servers, busboys, and bartenders. However, they spent over 20% of each shift performing the non-tipped duties described above.

47.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jose Ubaldo Roman Maria*

48.    Plaintiff Roman was employed by Defendants from approximately September 2017 until on or about October 4, 2018.

49.    Defendants ostensibly employed Plaintiff Roman as a food runner and expediter.

50.    However, Plaintiff Roman was also required to spend a significant portion of his work day performing the non-tipped duties described above.

51.    Although Plaintiff Roman ostensibly was employed as a food runner and expediter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

52.    Plaintiff Roman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

53.    Plaintiff Roman's work duties required neither discretion nor independent judgment.

54.    From approximately September 2017 until on or about October 4, 2018, Plaintiff Roman worked from approximately 3:30 p.m. until on or about 11:00 p.m. to 11:30 p.m., Wednesdays through Saturdays (typically 30 to 32 hours per week).

55.    Throughout his employment, Defendants paid Plaintiff Roman his wages by direct deposit and checks.

56.    From approximately September 2017 until on or about October 4, 2018, Defendants paid Plaintiff Roman $8.65 per hour.

57.    For approximately a week, Defendants did not pay Plaintiff Roman any wages for his work.

58.    Defendants never granted Plaintiff Roman any breaks or meal periods of any kind.

59.    Plaintiff Roman was never notified by Defendants that his tips were being included as an offset for wages.

60.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Roman's wages.

61.    Defendants withheld a portion of Plaintiff Roman's tips; specifically, Defendants withheld a portion of the tips that customers wrote in or paid Plaintiff Roman and used it to pay Defendant Guliaev, a manager.

62.    Defendants did not give any notice to Plaintiff Roman, in English and in Spanish (Plaintiff Roman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.    Defendants required Plaintiff Roman to purchase "tools of the trade" with his own funds—including five shirts, three pairs of jeans and three pairs of shoes.

*Plaintiff Nelson Javier Vasquez Rodriguez*

64.    Plaintiff Vasquez was employed by Defendants from approximately October 4, 2017 until on or about September 29, 2018.

65.    Defendants ostensibly employed Plaintiff Vasquez as an assistant server.

66.    However, Plaintiff Vasquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

67.    Although Plaintiff Vasquez ostensibly was employed as an assistant server, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

68.    Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

69.    Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

70.     From approximately October 4, 2017 until on or about July 2018, Plaintiff Vasquez worked as an opener from approximately 3:30 p.m. until on or about 10:30 p.m. to 11:00 p.m., Wednesdays, Thursdays and Saturdays and as a closer from approximately 4:30 p.m. until on or about 11:30 p.m. to 12:00 a.m., Fridays, Mondays and Tuesdays (typically 42 to 45 hours per week).

71.     From approximately July 2018 until on or about September 29, 2018, Plaintiff Vasquez worked as an opener from approximately 3:30 p.m. until on or about 10:30 p.m. to 11:00 p.m., Wednesdays, Thursdays and Saturdays and as a closer from approximately 4:30 p.m. until on or about 11:30 p.m. to 12:00 a.m., Tuesdays and Fridays (typically 35 to 37.5 hours per week).

72.     Throughout his employment, Defendants paid Plaintiff Vasquez his wages by check.

73.     From approximately October 4, 2017 until on or about December 2017, Defendants paid Plaintiff Vasquez $7.25 per hour.

74.     From approximately January 2018 until on or about September 29, 2018, Defendants paid Plaintiff Vasquez $8.65 per hour.

75.     For approximately three weeks, Defendants did not pay Plaintiff Vasquez any wages for his work.

76.     Defendants never granted Plaintiff Vasquez any breaks or meal periods of any kind.

77.     Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

78.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

79.   Defendants withheld a portion of Plaintiff Vasquez's tips; specifically, Defendants withheld a portion of the tips customers wrote in or paid to Plaintiff Vasquez and used it to pay Defendant Guliaev, a manager.

80.   Defendants required Plaintiff Vasquez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

81.   Furthermore, at the beginning of his employment, Defendants required Plaintiff Vasquez to sign several documents regarding his hourly wages.

82.   Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

83.   Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including six shirts, four pants, and two pairs of shoes.

*Plaintiff Prudente Ramirez Cornelio*

84.   Plaintiff Ramirez was employed by Defendants from approximately April 2018 until on or about September 29, 2018.

85.   Defendants ostensibly employed Plaintiff Ramirez as a busboy and food runner.

86.   However, Plaintiff Ramirez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

87.   Although Plaintiff Ramirez ostensibly was employed as a busboy and food runner, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

88.   Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

89. Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

90. From approximately April 2018 until on or about September 29, 2018, Plaintiff Ramirez worked from approximately 3:30 p.m. until on or about 11:00 p.m., Wednesdays through Saturdays and from approximately 4:00 p.m. until on or about 11:00 p.m., Tuesdays once a month when he worked in an on-call basis (typically 30 to 37 hours per week).

91. Throughout his employment, Defendants paid Plaintiff Ramirez his wages by check.

92. From approximately April 2018 until on or about September 29, 2018, Defendants paid Plaintiff Ramirez $8.65 per hour.

93. For approximately three weeks, Defendants did not pay Plaintiff Ramirez any wages for his work.

94. Plaintiff Ramirez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

95. For example, Defendants required Plaintiff Ramirez to work an additional 1 hour to 2 hours past his scheduled departure time every day, and did not pay him for the additional time he worked.

96. Defendants never granted Plaintiff Ramirez any breaks or meal periods of any kind.

97. Nevertheless, Defendants deducted money from Plaintiff Ramirez's weekly paycheck for meals he never ate.

98. Plaintiff Ramirez was never notified by Defendants that his tips were being included as an offset for wages.

99. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

100. Defendants withheld a portion of Plaintiff Ramirez's tips; specifically, Defendants withheld a portion of the tips customers wrote in or paid Plaintiff Ramirez and used it to pay defendant Guliaev; also, once a month, defendants withheld all of the tips customers had paid Plaintiff Ramirez.

101. Defendants required Plaintiff Ramirez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

102. Furthermore, on a number of occasions, Defendants required Plaintiff Ramirez to sign a document, the contents of which he was not allowed to review in detail.

103. Defendants took improper and illegal deductions of Plaintiff Ramirez's wages; specifically, Defendants deducted money from Plaintiff Ramirez's weekly wages for meals he never ate.

104. Defendants did not provide Plaintiff Ramirez an accurate statement of wages, as required by NYLL 195(3).

105. In fact, Defendants adjusted Plaintiff Ramirez's paystubs so that they reflected inaccurate tips wages.

106. Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107. Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including uniform shirts and pants, shoes and undershirts.

*Plaintiff David Bentzler*

108. Plaintiff Bentzler was employed by Defendants from approximately August 15, 2016 until on or about August 24, 2018.

109.  Defendants ostensibly employed Plaintiff Bentzler as a bartender.

110.  However, Plaintiff Bentzler was also required to spend a significant portion of his work day performing the non-tipped duties described above.

111.  Although Plaintiff Bentzler ostensibly was employed as a bartender, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

112.  Plaintiff Bentzler regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

113.  Plaintiff Bentzler's work duties required neither discretion nor independent judgment.

114.  Throughout his employment with Defendants, Plaintiff Bentzler regularly worked in excess of 40 hours per week.

115.  From approximately August 15, 2016 until on or about August 24, 2018, Plaintiff Bentzler worked from approximately 3:00 p.m. when he was an opener and 4:30 p.m. when he was a closer until on or about 9:00 p.m. to 10:00 p.m. when he was an opener and 11:00 p.m. to 12:00 a.m. when he was a closer, 4 or 5 days a week (typically 28 to 45 hours per week).

116.  Throughout his employment, Defendants paid Plaintiff Bentzler his wages by direct deposit.

117.  From approximately August 15, 2016 until on or about December 2017, Defendants paid Plaintiff Bentzler $7.25 per hour.

118.  From approximately January 2018 until on or about August 24, 2018, Defendants paid Plaintiff Bentzler $8.65 per hour.

119.  Defendants never granted Plaintiff Bentzler any breaks or meal periods of any kind.

120.  Plaintiff Bentzler was never notified by Defendants that his tips were being included as an offset for wages.

121.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Bentzler's wages.

122.  Defendants withheld a portion of Plaintiff Bentzler's tips; specifically, Defendants withheld a portion of the tips customers wrote in or paid Plaintiff Bentzler and used it to pay Defendant Guliaev, a manager.

123.  Defendants required Plaintiff Bentzler to sign a document, in order to release his weekly pay.

124.  Defendants did not give any notice to Plaintiff Bentzler of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

125.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

126.  Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

127.  Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

128.   Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

129.   Defendants required Plaintiffs and all other food runners, expediters, assistant servers, busboys, and bartenders to perform general non-tipped tasks in addition to their primary duties as food runners, expediters, assistant servers, busboys, and bartenders.

130.   Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

131.   Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

132.   Plaintiffs and all other tipped workers were paid at a rate that was lower than the required tip-credit rate by Defendants.

133.   However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

134.   New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

135.   In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the

lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

136.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

137.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

138.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as food runners, expediters, assistant servers, busboys, and bartenders for the tips they received.

139.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving food runners, expediters, assistant servers, busboys, and bartenders of a portion of the tips earned during the course of employment.

140.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

141.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

142.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

143. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

144. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

145. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

146. Defendants failed to provide Plaintiff Ramirez and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

147. Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address

if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

148.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

149.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

150.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

151.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

153.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

154.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

155.  Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

156.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

157.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

158.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

160.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

161.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

162.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

164.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

165.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

166.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

167.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

169.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

170.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

171. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

173. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

174. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

175. With each payment of wages, Defendants failed to provide Plaintiff Ramirez with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

176.     Defendants are liable to each Plaintiff Ramirez in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

177.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

179.     Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

180.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

182.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

183.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

184.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

185.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

186.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

187.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

188.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

189.    The deductions made from Plaintiffs' wages were not authorized or required by law.

190.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

191.    Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

192.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

193.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

194.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
         October 24, 2018

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                    By:     _____/s/ Michael Faillace_____
                            Michael Faillace [MF-8436]
                            60 East 42nd Street, Suite 4510
                            New York, New York 10165
                            Telephone: (212) 317-1200
                            Facsimile: (212) 317-1620
                            *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 4, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                      Prudente Ramirez Cornelio

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       4 de octubre 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 4, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Nelson Javier Vasquez Rodriguez
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                    4 de octubre de 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

October 4, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Ubaldo Roman Maria

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     04 de octubre de 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 9, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      David Bentlzer
Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       9 de octubre de 2018

*Certified as a minority-owned business in the State of New York*