UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROMAN MARIA, et al.,                              :

                                                  :

                    Plaintiffs,                   :        **REPORT AND**
                                                           **RECOMMENDATION**
          -against-                               :        18 Civ. 9826 (VSB) (GWG)

                                                  :

ROUGE TOMATE CHELSEA LLC, et al.,                 :

                                                  :

                    Defendants.                   :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

          Plaintiffs Jose Ubaldo Roman Maria, Nelson Javier Vasquez Rodriguez, Prudente

Ramirez Cornelio, and David Bentzler brought this action against defendants Rouge Tomate

Chelsea LLC, Rouge Tomate Corp., Rouge Tomate New York LLC, Emmanuel Verstrauten,

Christian Molina (collectively, "defendants"), and two non-defaulting individuals, seeking

unpaid wages and unpaid overtime under the New York Labor Law §§ 190 et seq. ("NYLL")

and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA").    A default has been

entered against the defendants.   The only remaining issue is the amount of damages Maria,

Rodriguez, and Cornelio (hereafter "plaintiffs") are due.[1]

---

[1]   See Proposed Findings of Fact and Conclusions of Law, filed June 17, 2020 (Docket
# 78) ("PFF"); Affidavit Declaration of Counsel in Support, filed June 17, 2020 (Docket # 78-1)
("Gottheim Decl."); Declaration of Plaintiff Roman Maria, filed June 17, 2020 (Docket # 78-3)
("Maria Decl."); Declaration of Plaintiff Vasquez Rodriguez, filed June 17, 2020 (Docket # 78-
4) ("Rodriguez Decl."); Declaration of Plaintiff Ramirez Cornelio, filed June 17, 2020 (Docket
# 78-5) ("Cornelio Decl."); Damages Calculation, filed June 17, 2020 (Docket # 78-6)
("Damages Calc."); Attorneys' Invoice, filed June 17, 2020 (Docket # 78-7) ("Invoice").
          Although Bentzler is mentioned in the complaint and still appears on the docket, he is not
mentioned in the inquest documents.   There is no reference to his damages in the Proposed
Findings of Fact and Conclusions of Law (Docket # 78) and he has not submitted a declaration in
support of any damages he may be due.   Thus, he should not be awarded any damages.

I.  BACKGROUND

A.  Procedural Background

The complaint was filed on October 24, 2018 (Docket # 1) ("Compl.").   After defendants were served and failed to respond, the Clerk issued certificates of default for each defendant on July 12, 2019 (Docket ## 43-47).   The district judge issued an order requiring the defendants to show cause why a default judgment should not be entered against them.   See Order to Show Cause, filed August 13, 2019 (Docket # 59).   Defendants did not respond or appear, but the district judge reserved entering default judgment until the claims against the non-defaulting individuals were resolved.   Order, filed Oct. 28, 2019 (Docket # 65).   The two non-defaulting individuals were voluntarily dismissed on November 8, 2019 (Docket # 68).   On May 11, 2020, plaintiffs were directed to file an amended proposed default judgment against defendants (Docket # 72).   The motion for default judgment was granted on May 20, 2020 (Docket # 74) and was referred for an inquest (Docket # 75).

On May 21, 2020, this Court issued an order directing plaintiffs to file Proposed Findings of Fact and Conclusions of Law.   See Scheduling Order for Damages Inquest, filed on May 21, 2020 (Docket # 76).   On June 17, 2020, plaintiffs complied with that order.   See PFF.   They also filed certificates of service indicating that the proposed findings had been served on defendants.   See Certificate of Service, filed on June 18, 2020 (Docket # 79).

B.  Facts Relating to Liability

In light of the defendants' default, plaintiffs' properly pleaded allegations in the complaint, except those related to damages, are accepted as true.   See, e.g., City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law

2

axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.") (citation omitted).   "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).   This inquiry requires the district court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting damages to be determined under this rule."   Id.

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require" a district court to conduct a hearing on the damages amount.   Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper.") (internal quotation marks and citation omitted).   In this case, the Court finds that a hearing is unnecessary inasmuch as plaintiffs' submissions have not been contested and they provide all the information needed to determine their damages.

Defendants "own, operate, or control" a restaurant under the name "Rouge Tomate" in New York City.   See Compl. ¶¶ 2, 28; see also id. ¶ 37.   Individual defendants Verstrauten and Molina, "serve or served as owner, manages, principals, or agent of" Rouge Tomate Chelsea LLC, Rouge Tomate Corp., and Rouge Tomate New York LLC ("corporate defendants"), and "through these corporate entities, operate or operated the restaurant [(Rouge Tomate)] as a joint

or unified enterprise."   <u>Id.</u> ¶ 3.   The individual defendants determined the wages and

compensation of employees of Rouge Tomate in addition to establishing the schedules,

maintaining records, and having the authority to hire and/or fire employees.   <u>Id.</u> ¶¶ 32-33; <u>see</u>

<u>also</u> <u>id.</u> ¶ 39.

Plaintiffs were employed as "food runners, expediters, assistant servers, busboys, and

bartenders" but spent a "considerable part of their work day performing non-tipped duties."   <u>Id.</u>

¶ 5; <u>see</u> <u>also</u> <u>id.</u> ¶¶ 9, 46, 50-51; Maria Decl. ¶¶ 5-6; Rodriguez Decl. ¶¶ 5-6; Cornelio Decl. ¶¶ 5-

6.   "Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate

minimum wage and overtime compensation for the hours that they worked."   Compl. ¶ 6.   Also,

"Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay

Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any

additional overtime premium."   <u>Id.</u> ¶ 7.   In addition, defendants failed to give plaintiffs any

notice of their "rate of pay, [the] employer's regular pay day, and such other information as

required by NYLL §195(1)," <u>id.</u> ¶¶ 62, 82, 106; <u>see</u> <u>also</u> <u>id.</u> ¶ 147, and did not provide plaintiffs

"with accurate wage statements at the time of their payment of wages," <u>id.</u> ¶ 146.

Maria was employed by defendants as a "food runner and expediter" from September

2017, until October 4, 2018.   Compl. ¶¶ 21, 48; Maria Decl. ¶¶ 4-5.   Maria worked from around

3:30 p.m. until 11 or 11:30 p.m., Wednesday through Saturday, which was typically 30 to 32

hours per week.   Compl. ¶ 54; Maria Decl. ¶ 9.   He was paid $8.65 per hour through direct

deposit and check.   Compl. ¶¶ 55-56; Maria Decl. ¶¶ 10-11.   "For approximately a week,

Defendants did not pay Plaintiff Roman [Maria] any wages for his work."   Compl. ¶ 57; Maria

Decl. ¶ 12.   He "was never notified by Defendants that his tips were being included as an offset

for wages," and defendants did not account for tips in a daily or weekly account of his wages.
Compl. ¶¶ 59-60; Maria Decl. ¶¶ 14-15.   Defendants also withheld a portion of Maria's tips.
Compl. ¶ 61.   Finally, "[d]efendants did not give any notice to Plaintiff Roman [Maria], in
English and in Spanish ([his] primary language), of his rate of pay, [the] employer's regular pay
day," Compl. ¶ 62; Maria Decl. ¶ 17, and "did not provide . . . an accurate statement of wages,"
Maria Decl. ¶ 16.

Rodriguez was employed by defendants as an assistant server from October 4, 2017, until
September 29, 2018.   Compl. ¶¶ 23, 64-65; Rodriguez Decl. ¶¶ 4-5.   From October 4, 2017,
until July 2018, Rodriguez worked as an "opener" and/or "closer" from 3:30 p.m. until 10:30 or
11 p.m. on Wednesdays, Thursdays, and Saturdays and from 4:30 p.m. until 11:30 p.m. or 12
midnight on Mondays, Tuesdays, and Fridays, for a total of 42 to 45 hours per week.   Compl.
¶ 70; Rodriguez Decl. ¶ 9.   From July 2018 until September 29, 2018, he worked as an opener
and/or closer from 3:30 p.m. until 10:30 or 11 p.m. on Wednesdays, Thursdays, and Saturdays
and from 4:30 p.m. until 11:30 p.m. or 12 midnight on Tuesdays and Fridays, for a total of 35 to
37.5 hours per week.   Compl. ¶ 71; Rodriguez Decl. ¶ 10.   In 2017, Rodriguez was paid $7.25
per hour and in 2018 he was paid $8.65 per hour.   Compl. ¶¶ 73-74; Rodriguez Decl. ¶¶ 12-13.
But, "[f]or approximately three weeks, Defendants did not pay Plaintiff Vasquez [Rodriguez]
any wages for his work."   Compl. ¶ 75; see also Rodriguez Decl. ¶ 14.   He "was never notified
by Defendants that his tips were being included as an offset for wages," and defendants did not
account for tips in a daily or weekly account of his wages.   Compl. ¶¶ 77-78; Rodriguez Decl.
¶¶ 16-17.   Defendants also withheld a portion of Rodriguez's tips.   Compl. ¶ 79.   "Defendants
did not give any notice to Plaintiff Vasquez [Rodriguez], in English and in Spanish ([his]

primary language), of his rate of pay, [the] employer's regular pay day," Compl. ¶ 82; Rodriguez

Decl. ¶ 19, and "did not provide . . . an accurate statement of wages," Rodriguez Decl. ¶ 18.

Cornelio was employed by defendants as a bus boy and food runner from April 2018

until September 29, 2018.   Compl. ¶¶ 25, 84-85; Cornelio Decl. ¶¶ 4-5.   He worked from 3:30

p.m. until around 11 p.m., Wednesday through Saturday and from 4:00 p.m. until around 11:00

p.m. one Tuesday a month on an on-call basis for an average of 30 to 37 hours per week.

Compl. ¶ 90; Cornelio Decl. ¶ 9.   Cornelio was paid $8.65 per hour via check.   Compl. ¶¶ 91-

92; Cornelio Decl. ¶¶ 10-11.   But, "[f]or approximately three weeks, Defendants did not pay

Plaintiff Ramirez [Cornelio] any wages for his work."   Comp. ¶ 93; Cornelio Decl. ¶ 12.   He

"was never notified by Defendants that his tips were being included as an offset for wages," and

defendants did not account for tips in a daily or weekly account of his wages.   Compl. ¶¶ 98-99;

Cornelio Decl. ¶¶ 14, 16.   Defendants also withheld a portion of Cornelio's tips, but adjusted his

paystubs "so that they reflected inaccurate tips wage."   Compl. ¶¶ 100, 105.   "Defendants did

not give any notice to Plaintiff Ramirez [Cornelio], in English and in Spanish ([his] primary

language), of his rate of pay, [the] employer's regular pay day," Compl. ¶ 106; Cornelio Decl.

¶ 18, and "did not provide . . . an accurate statement of wages," Cornelio Decl. ¶ 17.

Plaintiffs' proposed findings indicate that they seek the following: $6,497.60 for Maria

for unpaid-minimum-wage damages, $10,040.74 for Rodriguez for unpaid minimum and

overtime wages, and $4,656.68 for Cornelio for unpaid-minimum-wage damages, PFF ¶¶ 19-21

(second);[2] all plaintiffs seek liquidated damages under the FLSA and NYLL — $6,497.60 for

Maria, $10,040.74 for Rodriguez, and $4,656.68 for Cornelio, see id. ¶ 24 (second); and

statutory damages under the NYLL in the amount of $10,000 per plaintiff, see id. ¶ 25 (second).[3]

They also seek pre-judgment interest at a rate of 9% per year.   Id. ¶ 26 (second).   Finally,

plaintiffs seek attorneys' fees in the amount of 40% of the judgment, or in the alternative, for

$8,195 in attorneys' fees and $869.72 in costs.   See Invoice at 3; see also PFF ¶ 31-32 (second).

II.   DISCUSSION

Plaintiffs seek recovery under both the NYLL and FLSA.   It is settled that while

> a plaintiff may be entitled to recover unpaid minimum wages and overtime pay
> under both the FLSA and the NYLL, he or she may not recover twice. . . . Instead,
> where a plaintiff is entitled to damages under both federal and state wage law, a
> plaintiff may recover under the statute which provides the greatest amount of
> damages.

Gonzalez Mercedes v. Tito Transmission Corp., 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6,

2018) (internal punctuation and citations omitted), adopted by 2019 WL 102007 (S.D.N.Y. Jan.

4, 2019).   Because the NYLL provides for the greater measure of recovery in this case, we

address only the provisions of the NYLL.

A.   Status of Defendants as Plaintiffs' "Employers"

The NYLL's definition of employment is nearly identical to the FLSA's.   See 29 U.S.C.

---

[2]   The PFF is divided into two sections, Findings of Fact and Conclusions of Law, and
the paragraph numbering resets when the section changes.   See PFF at 7.   Thus, there are
duplicates of several paragraph numbers, which we distinguish with the annotation "first" or
"second."

[3]   Although plaintiffs' damages chart includes a line for "tools of the trade," see
Damages Calc. at *6, and the complaint alleges that plaintiffs had to buy "tools of the trade" with
their own funds, see, e.g., Compl. ¶ 63, the Proposed Findings of Fact and Conclusions of Law
do not mention "tools of the trade," let alone claim damages for purchasing "tools of the trade."

§ 203(g) ("'Employ' includes to suffer or permit to work."); N.Y. Lab. Law § 2(7) ("'Employed' includes permitted or suffered to work.").    Thus, "[c]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."    Salazar v. 203 Lena Inc., 2020 WL 2489070, at *4 (S.D.N.Y. May 14, 2020) (alteration in original) (quoting Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015)). Under the FLSA, an employment relationship exists when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question."    Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing cases).

Plaintiffs allege that they were employed by defendants in 2017 and 2018.   See Maria Decl. ¶ 4; Rodriguez Decl. ¶ 4; Cornelio Decl. ¶ 4; see also Compl. ¶ 40.   During their tenure with Rouge Tomate, the plaintiffs worked as "food runners, expediters, assistant servers, busboys, and bartenders" but also spent a "considerable part of their work day performing non-tipped duties."    Compl. ¶ 5; see also id. ¶¶ 9, 46, 50-51; Maria Decl. ¶¶ 5-6; Rodriguez Decl. ¶¶ 5-6; Cornelio Decl. ¶¶ 5-6.   The corporate defendants controlled their employees through Verstrauten and Molina, who were empowered with the ability to establish the employees' wages and hours and to hire and fire employees.   See Compl. ¶¶ 32-33 (first).   During the same period, Verstrauten was the "owner, officer and/or agent" of the corporate defendants and Molina was the "manager."   Id.   They both "possessed substantial control over Plaintiffs' . . . working conditions, and over the policies and practices with respect to the employment and compensation."    Id. ¶ 39 (first).   "Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees."   Id. ¶ 38 (first).   Thus, defendants are

8

plaintiffs' employers.

   B.  Unpaid Minimum Wage

   Plaintiffs' were paid hourly, as follows: for the entirety of his employment, Maria was

paid $8.65 per hour, Maria Decl. ¶ 11; in 201, Rodriguez was paid $7.25 per hour and in 2018 he

was paid $8.65 per hour, Rodriguez Decl. ¶¶ 12-13; and Cornelio was paid $8.65 per hour except

for September 9, 2018 through September 29, 2018, during which he was not paid, Cornelio

Decl. ¶¶ 9, 11, 12; Damages Chart.   Plaintiffs worked for defendants' restaurant in New York

City.   See Maria Decl. ¶ 3; Rodriguez Decl. ¶ 3; Cornelio Decl. ¶ 3; see also Compl. ¶¶ 28-31.

While plaintiffs seek to be compensated at the New York State minimum wage rate for large

employers in New York City, see PFF ¶ 18 (second) (citing 12 N.Y.C.R.R. 146-1.2(a)(1)(i)(a)),

they do not plead that Rouge Tomate employed 11 or more employees, which is the minimum

for a "large employer," see N.Y. Lab. Law § 652(1)(a)(i).   Thus, plaintiffs should be

compensated at the lesser, small employer minimum-wage rate for New York City, which was

$10.50 in 2017 and $12 in 2018, see N.Y. Lab. Law § 652(1)(a)(ii).

   Under certain conditions, an employer is entitled to pay an employee an hourly wage less

than the standard minimum wage if the employee receives tips from customers for his or her

services.   New York law, however, requires that an employer provide an employee notice before

it may deduct a "tip credit" from the employee's base wage.   See N.Y. Comp Codes R & Regs.

tit. 12, § 146-2.2 (effective Jan. 1, 2011); accord Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d

490, 498 (S.D.N.Y. 2015).   The burden is on the defendants to show that they have complied

with the tip-notice requirement.   See N.Y. Comp Codes R. & Regs. tit. 12, § 146-2.2(d) ("The

employer has the burden of proving compliance with the notification provisions of [the

NYLL].”); Villar v. Prana Hosp., Inc., 2017 WL 1333582, at *3 n.4 (S.D.N.Y. Apr. 11, 2017)

adopted by 2018 WL 3479841 (S.D.N.Y. July 25, 2018).

Plaintiffs state they were provided no such notice, see Maria Decl. ¶¶ 14-15; Rodriguez

Decl. ¶¶ 16-17; Cornelio Decl. ¶¶ 14-15, and because defendants have not appeared, they have

not met their burden to show otherwise.   Accordingly, plaintiffs were paid below minimum

wage and are owed the difference between their actual wages and minimum wage.   As reflected

on the attached "Minimum Wage Chart," plaintiffs should be awarded unpaid-minimum-wage

damages as follows: $5,025.10 to Maria, $7,253.99 to Rodriguez, and $3,787.18 to Cornelio.

### C.   Unpaid Overtime Wages

Under the NYLL, any employee who works more than 40 hours per week must be paid at

a rate not less than 150% the employee's regular hourly rate for all hours beyond 40.   N.Y.

Comp. Codes R. & Regs. Tit. 12 § 142-2.2.   Rodriguez worked an average of 43.5 hours each

week from October 4, 2017, until July 15, 2018.   See Rodriguez Decl. ¶ 9.   Because

Rodriguez's rate was below the minimum wage, he is entitled to overtime wages at one-and-a-

half times the minimum-wage rate.   See 29 C.F.R. § 778.100 (regular rate, for purposes of

calculating overtime, may not be less than statutory minimum wage); N.Y. Comp. Codes R. &

Regs. tit. 12 § 142-2.2 (providing that overtime rate should be computed in the same manner as

under the FLSA).

At 43.5 hours per week, see Rodriguez Decl. ¶ 9, Rodriguez should have been paid at a

rate of $15.75 ($10.50*1.5) for 3.5 hours (43.5-40) of overtime in 2017 and $18 ($12*1.5) for

3.5 hours (43.5-40) overtime in 2018, which equals $55.13 per week in overtime pay in 2017 and

$63 per week in overtime pay in 2018.   As explained in section II.B, Rodriguez has already

been awarded minimum wage for these hours.   Thus, as reflected in the attached "Rodriguez

Overtime Chart," Rodriguez was underpaid $826.88 in overtime payments.

    D.   Liquidated Damages

Plaintiffs' seek liquidated damages in the amount of 100% of unpaid wages.   See PFF

¶ 22 (second).   The NYLL authorizes liquidated damages of 100% of unpaid wages "unless the

employer proves a good faith basis to believe that its underpayment of wages was in compliance

with the law."   N.Y. Lab. Law § 663(1).   Because the defendants have not offered any proof of

their good faith, plaintiffs are entitled to liquidated damages in the amount of 100% of their

unpaid minimum wages and unpaid overtime each, which totals $5,025.10 for Maria, $9,734.61

for Rodriguez, and $3,787.18 for Cornelio.

    E.   Failure to Provide Notices and Wage Statements Under NYLL

NYLL section 195(1) requires that, at the time of hiring, an employer "provide his or her

employees, in writing in English and in the language identified by each employee as [their]

primary language," notice of

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day,
> week, salary, piece, commission, or other; allowances, if any, claimed as part of
> the minimum wage, including tip, meal, or lodging allowances; the regular pay
> day designated by the employer in accordance with section one hundred ninety-
> one of this article; the name of the employer; any "doing business as" names used
> by the employer; the physical address of the employer's main office or principal
> place of business, and a mailing address if different; the telephone number of the
> employer; plus such other information as the commissioner deems material and
> necessary.

Id. § 195(1)(a) (effective Feb. 27, 2015); accord Franco v. Jubilee First Ave. Corp., 2016 WL

4487788, at *13 (S.D.N.Y. Aug. 25, 2016).   The notice must also state an employee's regular

hourly rate and overtime rate of pay.   N.Y. Lab. L. § 195(1)(a).   After February 25, 2015, the

statutory damages for violating the notice requirement are $50 per workday for a maximum of $5,000.   N.Y. Lab. Law § 198(1-b).   Having affirmed that they were never given a notice and acknowledgement during their employment which was at minimum 26 weeks of work, see Maria Decl. ¶¶ 11, 17-18; Rodriguez Decl. ¶¶ 4, 18-19; Cornelio Decl. ¶¶ 4, 17-18, plaintiffs are owed $5,000 in statutory damages each.

Furthermore, since April 9, 2011, the NYLL has required employers to "furnish each employee with a statement with every payment of wages," which must include, inter alia, the rate of payment, the gross wages provided, and the applicable overtime rate.   N.Y. Lab. Law § 195(3).   Plaintiffs were never provided a wage statement throughout their employment.   See Maria Decl. ¶ 16; Rodriguez Decl. ¶ 18; Cornelio Decl. ¶ 17.   Since February 27, 2015, the statute allows a penalty of $250 for each workday that the violations occurred, not to exceed $5,000.   See N.Y. Labor Law § 198(1-d).   Thus, plaintiffs should be awarded $5,000 in statutory damages each.

In total, each plaintiff is due $10,000 in statutory damages under the NYLL.

F.   Pre-Judgment Interest

A plaintiff who prevails on a NYLL-wage claim is entitled to prejudgment interest on any "underpayment" of wages.   See N.Y. Lab. L. § 198(1-a); Schalaudek v. Chateau 20th St. LLC, 2017 WL 729544, at *10 (S.D.N.Y. Feb. 24, 2017), modified and adopted by 2017 WL 1968677 (S.D.N.Y. May 11, 2017); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016); Castillo v. RV Transport, Inc., 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016).   Prejudgment interest is not available for violations of the wage statement or wage notice provisions.   Cf. N.Y. Lab. L. § 198(1-b), (1-d) (wage statement and wage notice provision do

12

not include prejudgment interest award); Schalaudek, 2017 WL 729544, at *10-11 (awarding prejudgment interest on unpaid wages and overtime, but not on statutory damages for notice violations).   Also, contrary to plaintiffs' assertions, see PFF ¶¶ 27-29 (second), "the award of prejudgment interest applies only to the amount of underpayment of wages, not the liquidated damages."   Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017) (citations omitted).

Prejudgment interest in New York runs at the rate of nine percent per annum.   N.Y. C.P.L.R. §§ 5001(a), 5004.   The starting date from which a court computes this interest is "the earliest ascertainable date the cause of action existed."   Conway v. Icahn & Co. Inc., 16 F.3d 504, 512 (2d Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).   However, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."   N.Y. C.P.L.R. § 5001(b); see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' . . . .") (citing 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559 (2d Dep't 1996)).

Here, each plaintiffs' claim for unpaid wages arose on different dates.   The mid-point date is the midpoint between when damages began accruing and when they stopped accruing.

Maria's claims began accruing when he started working for defendants, on September 1, 2017, and ended when he was no longer employed by defendants, on October 4, 2018.   See Maria Decl. ¶ 9.   Thus, while plaintiffs claim the midpoint is February 15, 2018, see PFF ¶ 27

(second), the correct midpoint date is March 19, 2018.   Accordingly, Maria is entitled to prejudgment interest on his unpaid-wages damages of $5,025.10 from March 19, 2018, until the date judgment is entered, at $1.24 per day ([$5,025.10*.09] / 365 days).

Rodriguez's claims began accruing when he started working for defendants, on October 4, 2017, and ended when he was no longer employed by defendants, on September 29, 2018. See Rodriguez Decl. ¶ 4.   Thus, while the plaintiffs claim the midpoint date is March 15, 2018, see PFF ¶ 28 (second), the correct midpoint date is April 2, 2018.   Accordingly, Rodriguez is entitled to prejudgment interest on his unpaid-wages damages of $9,734.61 from April 2, 2018, until the date judgment is entered, at $2.40 per day ([$9,734.61*.09] / 365 days).

Cornelio's claims began accruing when he started working for defendants, on April 1, 2018, and ended when he was no longer employed by defendants, on September 29, 2018.   See Cornelio Decl. ¶ 4.   Thus, while plaintiffs claim the midpoint date is June 15, 2018, see PFF ¶ 29 (second), the correct midpoint date is June 30, 2018.   Accordingly, Cornelio is entitled to prejudgment interest on his unpaid-wages damages of $3,787.18 from June 30, 2018, until the date judgment is entered, at $0.93 per day ([$3,787.18 *.09] / 365 days).

G.   Attorneys' Fees

Because plaintiffs have made successful claims under the NYLL, they are entitled to an award of reasonable attorneys' fees.   See N.Y. Lab. L. § 663(4).   Plaintiffs seek attorneys' fees and costs in accordance with their retainer agreement with their counsel, Michael Faillace & Associates, P.C. ("the firm") which entitles the firm to "all costs . . . plus 40% of all remaining proceeds."   PFF ¶ 31 (second).   Plaintiffs argue "[a]t a minimum, the Court should approve attorneys' fees equal to one-third of the recovery amount.   Fees of such proportion are regularly

14

approved in this district as a matter of course" and note "it would typically be an abuse of discretion for a court to disapprove such an award." Id. (citing Fisher v. SD Protective Inc., 948 F.3d 593, 603-604 (2d Cir. 2020)).   "In the alternative, Plaintiffs request that the Court approve payment to the firm of all costs plus fees incurred, as reflected in the invoice . . . in the total amount of a multiplier of $9,064.72 including a filing fee of $400.00." Id. ¶ 32 (second).

The case cited by plaintiffs in support of their percentage-based fee award is inapplicable, however, as it involved court-approved attorneys' fees from a common fund that resulted from a settlement in an FLSA action.   See generally Fisher, 948 F.3d at 602-603.   Here, there is no common fund from which counsel seek their fees.

In the context of an inquest, the attorneys' fee award is not to be subtracted from a common fund.   As has been frequently stated, in determining such a fee award, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); accord Stanczyk v. City of N.Y., 752 F.3d 273, 284 (2d Cir. 2014).   This calculation yields a "presumptively reasonable fee," Arbor Hill, 522 F.3d at 183, and is commonly referred to as the "lodestar," id.; see also Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009).   Although district courts remain free to modify this award to ensure that it represents a reasonable fee and incorporates important or unique aspects of the case, see, e.g., Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992), the lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010) (citation

and internal quotation marks omitted).

Using the "lodestar" method, plaintiffs' request $8,195 in attorneys' fees and $869.72 in costs.  See Invoice at 3; see also PFF ¶ 32 (second).   In support of this request, plaintiffs submitted proposed conclusions of law, see PFF ¶¶ 30-34 (second), which state that counsel for plaintiffs worked on the case for 21.3 hours, see id. ¶ 33 (second), and describe the experience and billing rates of the attorneys and paralegals that worked on the case, see id. ¶ 34 (second). They also submitted the declaration of Jordan Gottheim, counsel for plaintiffs, see Gottheim Decl. ¶ 2, which was submitted "in support of Plaintiffs' Proposed Findings of Fact and Conclusions of Law" and attached "an invoice generated by Michael Faillace & Associates, P.C., Plaintiffs' counsel, reflecting costs and attorneys' fees incurred to date," id. ¶¶ 3, 9; see also Invoice.

However, it is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).   Fee applications that do not contain such supporting data "should normally be disallowed."  Id. at 1154; accord Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 412 (S.D.N.Y. 2004).   While it is permissible to provide a summary of time records (such as may appear on an invoice) in lieu of actual records, a person with knowledge must still provide the court with competent evidence that the summary is in fact based on time records that were contemporaneously made by each of the attorneys.   See, e.g., Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); Hollander Glass Texas, Inc. v.

Rosen-Paramount Glass Co., Inc., 291 F. Supp. 3d 554, 562-63 (S.D.N.Y. 2018).   Here, there is

no competent evidence submitted by plaintiffs to support the assertion that the invoice is based

on contemporaneously-made time records.   Thus, attorneys' fees should not be awarded.

 Plaintiffs successful under the FLSA and NYLL also may be entitled to costs, which

"'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged

to their clients.'"   See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting

U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); accord Febus

v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).   In this case,

plaintiffs seek reimbursement of costs in the amount of $869.72, which include a filing fee,

process server fees, and due diligence costs.   See Invoice at 3.   Fees for filing and service of

process are compensable.   See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous

Ray's Pizza Buffet Inc., 2013 WL 5363777, at *8 (S.D.N.Y. Sept. 26, 2013) (awarding costs for

filing fees, copies, research, travel, and services of process), adopted by 2013 WL 5664058

(S.D.N.Y. Oct. 17, 2013).   Defendants do not explain what specific services are being sought

under the rubric of "due diligence" and thus the requests for those costs ($164) should be

disallowed, leaving a total of $705.72 in compensable costs.

* * *

In sum, plaintiffs should be awarded damages as follows, with the permissible costs of

$705.72 allocated evenly among the three plaintiffs — that is $235.24 each:

| Plaintiff | Total underpaid | Liquidated Damages | Statutory Damages and costs | Total damages | Prejudgment interest per day | Prejudgment interest start date |
|---|---|---|---|---|---|---|
| Maria | $5,025.10 | $5,025.10 | $10,000 plus $235.24 | $20,285.44 | $1.24 | 3/19/2018 |
| Rodriguez | $9,734.61 | $9,734.61 | $10,000 plus $235.24 | $29,704.47 | $2.40 | 4/2/2018 |
| Cornelio | $3,787.18 | $3,787.18 | $10,000 plus $235.24 | $17,809.59 | $0.93 | 6/30/2018 |

Plaintiffs request that the judgment include a provision automatically increasing the

judgment by the amount set forth in N.Y. Lab. L. § 198(4).   See PFF ¶ 38.   This section

provides that

> Any judgment or court order awarding remedies under this section shall provide
> that if any amounts remain unpaid upon the expiration of ninety days following
> issuance of judgment, or ninety days after expiration of the time to appeal and no
> appeal is then pending, whichever is later, the total amount of judgment shall
> automatically increase by fifteen percent.

N.Y. Lab. L. § 198(4).   Accordingly, if any part of the judgment is unpaid at the expiration of

such time, and no appeal is pending, the judgment should provide that it is increased by 15

percent.

III.  <u>CONCLUSION</u>

Judgment should be awarded in favor of plaintiffs as follows:

Judgement should be entered against defendants in favor of plaintiff Jose Ubaldo Roman Maria in the amount of $20,285.44 plus prejudgment interest at the rate of $1.24 per day from March 19, 2018, until the date judgment is entered.

 Judgment should be entered against defendants in favor of plaintiff Nelson Javier Vasquez Rodriguez in the amount of $29,704.47 plus prejudgment interest at the rate of $2.40 per day from April 2, 2018, until the date judgment is entered.

Judgment should be entered against defendants in favor of plaintiff Prudente Ramirez Cornelio in the amount of $17,809.59 plus prejudgment interest at the rate of $.93 per day from June 30, 2018, until the date judgment is entered

The text of the judgment should provide that if the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of appeal, whichever is later, and no appeal is pending, then the total amount of judgment shall automatically increase by fifteen percent.

The Clerk is requested to mail copies of this Report and Recommendation to the addresses appearing at the end of this Report and Recommendation.

<b><u>PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION</u></b>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served.   Any objections and responses shall be filed with the Clerk of the Court.   Any request for an extension of time to file

objections or responses must be directed to Judge Broderick.   If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.   See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Defendants may file their response by email by sending it in pdf form to Temporary_Pro_Se_Filing@nysd.uscourts.gov.   In the alternative, the response may be mailed to Pro Se Docketing, 500 Pearl Street, New York, NY 10007.

Dated:  October 14, 2020
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Clerk to send copies to:

Emmanuel Verstrauten
Rouge Tomate Chelsea LLC, c/o Emmanuel Verstrauten
Rouge Tomate New York LLC, c/o Emmanuel Verstrauten
Rouge Tomate Corp., c/o Emmanuel Verstrauten
605 West 42nd Street, Apt. PHSB
New York, NY 10036

Christian Molina
186 East 164th Street, Apt. SL
Bronx, NY 10456

Roman Maria et al v. Rouge Tomate Chelsea LLC et al (18cv9826)

**Total damages chart**

| Plaintiff | Pay Period | No. of weeks in Pay Period | Hours worked per week | Actually paid per Hour | Min wage rate | Overtime rate | Actually paid per week | Underpaid per week | Total Underpaid per pay period | Total underpaid | Liquidated Damages | Statutory Damages | 1/3 of costs | Total damages | Prejudgment interest per day | Prejudgment interest start date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Maria | 9/1/17-12/31/17 | 17 | 31 $ | 8.65 $ | 10.50 $ | 15.75 $ | 268.15 $ | 57.35 $ | 974.95 | $ 5,025.10 | $5,025.10 | $ 10,000.00 | $ 235.24 | $ 20,285.44 | 1.24 | 3/19/2018 |
| | 1/1/18-10/4/18 | 39 | 31 $ | 8.65 $ | 12.00 $ | 18.00 $ | 268.15 $ | 103.85 $ | 4,050.15 | | | | | | | |
| Rodriguez | 10/4/17-12/31/17 | 13 | 43.5 $ | 7.25 $ | 10.50 $ | 15.75 $ | 315.38 $ | 196.50 $ | 2,554.50 | $ 9,734.61 | $9,734.61 | $ 10,000.00 | $ 235.24 | $ 29,704.47 | 2.40 | 4/2/2018 |
| | 1/1/18-7/15/18 | 28 | 43.5 $ | 8.65 $ | 12.00 $ | 18.00 $ | 376.28 $ | 208.73 $ | 5,844.30 | | | | | | | |
| | 7/16/18-9/29/18 | 11 | 36.25 $ | 8.65 $ | 12.00 $ | 18.00 $ | 313.56 $ | 121.44 $ | 1,335.81 | | | | | | | |
| Cornelio | 4/1/18-9/8/18 | 23 | 33.5 $ | 8.65 $ | 12.00 $ | 18.00 $ | 289.78 $ | 112.23 $ | 2,581.18 | $ 3,787.18 | $3,787.18 | $ 10,000.00 | $ 235.24 | $ 17,809.59 | 0.93 | 6/30/2018 |
| | 9/9/18-9/29/18 | 3 | 33.5 $ | - $ | 12.00 $ | 18.00 $ | - $ | 402.00 $ | 1,206.00 | | | | | | | |

Total damages for all plaintiffs  $ 67,799.50

**Minimum Wage Chart**

| Plaintiff | Pay Period | No. of weeks in Pay Period | Hours worked per week | Actually paid per Hour | Min wage rate | Actually paid per week [actually paid*hours worked per week] | Underpaid per week [(min wage*hours worked)-actually paid] | Total Underpaid per pay period [underpaid per week*weeks in pay period] | Total Underpaid |
|---|---|---|---|---|---|---|---|---|---|
| Maria | 9/1/17-12/31/17 | 17 | 31 $ | 8.65 $ | 10.50 $ | 268.15 $ | 57.35 $ | 974.95 | $ 5,025.10 |
| | 1/1/18-10/4/18 | 39 | 31 $ | 8.65 $ | 12.00 $ | 268.15 $ | 103.85 $ | 4,050.15 | |
| Rodriguez | 10/4/17-12/31/17 | 13 | 43.5 $ | 7.25 $ | 10.50 $ | 315.38 $ | 141.38 $ | 1,837.88 | $ 7,253.99 |
| | 1/1/18-7/15/18 | 28 | 43.5 $ | 8.65 $ | 12.00 $ | 376.28 $ | 145.73 $ | 4,080.30 | |
| | 7/16/18-9/29/18 | 11 | 36.25 $ | 8.65 $ | 12.00 $ | 313.56 $ | 121.44 $ | 1,335.81 | |
| Cornelio | 4/1/18-9/8/18 | 23 | 33.5 $ | 8.65 $ | 12.00 $ | 289.78 $ | 112.23 $ | 2,581.18 | $ 3,787.18 |
| | 9/9/18-9/29/18 | 3 | 33.5 $ | - $ | 12.00 $ | - $ | 402.00 $ | 1,206.00 | |

**Rodriguez Overtime Underpaid Chart**

| Plaintiff | Pay Period | No. of weeks in Pay Period | Hours worked per week | No. overtime hours | Min wage rate | Overtime rate | Overtime due per week [overtime rate*no. overtime hours] | Min wage awarded to overtime hours [overtime hours*min wage rate] | Overtime award per week [overtime due-min wage awarded] | Total Underpaid per pay period | Total underpaid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rodriguez | 10/4/17-12/31/17 | 13 | 43.5 | 3.5 $ | 10.50 $ | 15.75 $ | 55.13 $ | 36.75 $ | 18.38 $ | 238.88 | $ 826.88 |
| | 1/1/18-7/15/18 | 28 | 43.5 | 3.5 $ | 12.00 $ | 18.00 $ | 63.00 $ | 42.00 $ | 21.00 $ | 588.00 | |

\